**No. 25-3903**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MENG HUANG,

*Plaintiff-Appellant*,

v.

THE OHIO STATE UNIVERSITY; GIORGIO RIZZONI,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of Ohio
No. 2:19-cv-01976
Hon. Sarah D. Morrison

**APPELLANT MENG HUANG'S OPENING BRIEF**

Bruce C. Fox
bruce.fox@obermayer.com
Andrew J. Horowitz
andrew.horowitz@obermayer.com
D. McArdle Booker
mcardle.booker@obermayer.com
Obermayer Rebmann Maxwell &
Hippel LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
Tel: (412) 566-1500

*Attorneys for Appellant
Meng Huang*

## CORPORATE DISCLOSURE

Pursuant to 6 Cir. R. 26.1, Appellant Meng Huang makes the following disclosure:

Is said party a subsidiary or affiliate of a publicly owned corporation?

No.

Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No.

By: */s/ D. McArdle Booker, Esq.* Dated: April 6, 2026

## TABLE OF CONTENTS

CORPORATE DISCLOSURE .......... 2
TABLE OF AUTHORITIES .......... 4
STATEMENT IN SUPPORT OF ORAL ARGUMENT .......... 6
JURISDICTIONAL STATEMENT .......... 7
A. The Basis for the District Court's Jurisdiction .......... 7
B. The Basis for the Appellate Court's Jurisdiction .......... 7
C. The Filing Dates Establishing the Timeliness of the Appeal .......... 7
ISSUES PRESENTED .......... 8
STATEMENT OF THE CASE .......... 8
SUMMARY OF THE ARGUMENT .......... 10
ARGUMENT .......... 13
I. The District Court misapplied Darden/Bryson and improperly delegated the legal employee-status determination to the jury without adequate instruction. .......... 13
II. The District Court's Exclusion of Highly Probative, Relevant Evidence Deprived Huang of a Fair Trial. .......... 21
CONCLUSION .......... 29
CERTIFICATE OF COMPLIANCE .......... 31
CERTIFICATE OF SERVICE .......... 32
ADDENDUM – DESIGNATION OF DOCUMENTS .......... 33

# TABLE OF AUTHORITIES

## Cases

*Andler v. Clear Channel*, 670 F.3d 717, 721, 727 (6th Cir. 2012)..........................26
*Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004)......................................... 23, 24, 28, 29
*Bowman v. Vankeuren*, No. 21-cv-12845, 2025 U.S. Dist. LEXIS 250583, at *4 (E.D. Mich. Dec. 4, 2025).....................................................................22
*Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 751-752 (1989)............16
*Doherty v. City of Maryville*, 431 F. App'x 381, 385–86 (6th Cir. 2011)...............15
*Dudley v. Stonecroft Ministries, Inc.*, 142 F. Supp. 3d 653, 660-61 (S.D. Ohio 2015)...................................................................................20
*EEOC v. New Breed Logistics*, 783 F.3d 1057, 1075–76 (6th Cir. 2015)........ 14, 15
*Gootee v. Colt Indus., Inc.*, 712 F.2d 1057, 1067–68 (6th Cir. 1983).....................19
*Huang v. The Ohio State University, et al*, 116 F.4th 541 (6th Cir. 2024). 11, 16, 17
*Hurt v. Com. Energy, Inc.*, 973 F.3d 509, 523 (6th Cir. 2020)................................14
*Kissell v. Westinghouse Elec. Corp.*, 367 F.2d 375, 376 (1st Cir. 1966) ................19
*Kotteakos v. United States*, 328 U.S. 750, 765 (1946) ...........................................23
*Leonard v. Uniroyal, Inc.*, 765 F.2d 560, 566-568 (6th Cir. 1985).........................24
*Martin v. Polaris, Inc.*, No. 24-5852, 2025 U.S. App. LEXIS 29096, at *4–5 (6th Cir. Nov. 4, 2025)................................................................. 22, 23, 24
*Merchants Fast Motor Lines, Inc. v. Lane*, 259 F.2d 336, 338 (5th Cir. 1958) ......19
*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992)...................... 16, 19
*NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968)....................................19
*P.I.&I. Motor Express, Inc. v. RLI Ins. Co.*, 40 F.4th 398, 416 (6th Cir. 2022)......22
*Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998)........................................22
*Rodgers v. Ohio Valley CFM, Inc.*, 774 F.2d 1163, 1985 U.S. App. LEXIS 23559, at *17–18 (6th Cir. Sept. 13, 1985) ............................................................ 18, 21
*Schrand v. Fed. Pacific Elec. Co.*, 851 F.2d 152, 157 (6th Cir. 1988)....................23
*Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 715 (6th Cir. 1975) .... 18, 19, 21
*Tezak v. Montgomery Ward*.......................................................................... 26, 27
*United States v. Ankita Singh*, 147 F.4th 652, 661 (6th Cir. 2025) .........................22
*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006)....................15
*Worsham v. A.H. Robins Co.*, 734 F.2d 676, 690 (11th Cir. 1984).........................19

**Statutes**

28 U.S.C. § 1291 ........ 7
28 U.S.C. § 1332 ........ 7
42 U.S.C. § 1983 ........ 7, 10, 12
42 U.S.C. § 2000e *et seq.* ........ 7, 10, 11, 12

**Other Authorities**

IRS Cum. Bul., 1987 IRB LEXIS 254 ........ 16
Restatement (Second) of Agency § 220 (1958) ........ 16
Restatement (Third) of Agency § 7.07 cmt. f (2006) ........ 16

**Rules**

Fed. R. Evid. 403 ........ 22
Federal Rule of Evidence 401 ........ 21

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant requests oral argument of 15 minutes because the issues in this appeal are not only numerous and complex, but also interrelated, in that all combined to deny the jury the context and instruction needed to fully decide the factual issues, while at the same time requiring the jury to decide a legal issue. Oral argument will assist the Court in understanding the interrelation of these issues.

## JURISDICTIONAL STATEMENT

### A. The Basis for the District Court's Jurisdiction

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Huang's claims arise under the laws of the United States, specifically 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

### B. The Basis for the Appellate Court's Jurisdiction

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The district court entered judgment in favor of the Ohio State University ("OSU") on Huang's Title VII race and retaliation claims based on a jury finding on the legal question of whether Huang was employee and whether she could receive relief under Title VII. The jury reached a verdict in favor of Rizzoni on Huang's remaining Section 1983 claim and judgment was entered for Rizzoni. (Judgment in Favor of Rizzoni, R. 320, Page ID # 9613).

### C. The Filing Dates Establishing the Timeliness of the Appeal

The District Court dismissed the claims against OSU, determining Huang was not an employee, (Jury Verdict, R. 311, Page ID # 9565-9566), and entered judgment as to the Section 1983 claim in favor of Rizzoni on October 8, 2025. (Judgment in Favor of Rizzoni, R. 320, Page ID # 9613). The notice of appeal was filed on

November 7, 2025, thirty (30) days after judgment was entered in favor of Rizzoni and OSU. (Amended Notice of Appeal, R. 322, PageID# 9616-9617).

## ISSUES PRESENTED

1. Did the Trial Court err by finding Meng Huang was not an employee of OSU?

2. Did the Trial Court err by submitting a question of law to the jury rather than submitting discrete factual questions as directed by this Court?

3. Did the Trial Court err by excluding probative and relevant evidence that should have been admitted including, but not limited to, evidence probative of economic damages and evidence probative of the relevant context of sexual harassment and misconduct at The Ohio State University?

## STATEMENT OF THE CASE

This is a case about the exercise of power and acts of retaliation in higher education. Meng Huang was a Ph.D. student whose advisor controlled her funding, her visa, and her academic future, and who, according to Huang, used that power first to sexually harass her and then to end her career when she resisted. The Trial Court, however, abused its discretion by denying the jury the chance to consider the full facts of the case. It walled off the story of the exercise of power, of Rizzoni's threats to derail Huang's academic career, his unprecedented manipulation of her

candidacy exam, and her stellar academic record that directly rebutted his claim she fabricated her allegations as a poor performer seeking revenge.

The Trial Court also erred in its manner of putting the liability of the Ohio State University to the jury. On prior appeal and remand, this Court instructed the Trial Court to let the jury find facts about the incidents of Huang's relationship with OSU to guide the Trial Court in deciding, as a matter of law, whether Huang qualified as an employee under the common-law agency test. Instead of following that direction, the Trial Court collapsed the multi-factor *Darden/Bryson* inquiry into a single, legally loaded special interrogatory about "the right to control," and then, rather than directing the jury to find facts on which the Trial Court could make a legal determination, put the legal determination itself in the hands of the jury.

The Trial Court took a similar narrowing approach to evidence, improperly excluding critical evidence of the Defendants' exercises of power. This included evidence of an an OSU-created survey that documented the campus climate around sexual assault and evidence of the harms caused to Huang—precisely the kind of background needed to assess the plausibility of her account.

Taken together, the Trial Court's errors narrowed and defined the facts the jury was allowed to decide and the relevant information at the jury's disposal to decide it, while also expanding the jury's responsibility to deciding a central legal question. This appeal asks the Court to restore the full framework the law requires:

a complete employee-status analysis under the common-law agency test, properly framed factual questions for the jury, and a trial in which relevant, probative evidence of harassment, retaliation, and damages is heard by the jury rather than pared away.

## SUMMARY OF THE ARGUMENT

Meng Huang came to OSU as a top engineering student from China, recruited to work on a Ford Motor Company-funded research project under Professor Giorgio Rizzoni while pursuing her Ph.D. She asserts that, over several years, Rizzoni used his authority as her advisor and director of OSU's Center for Automotive Research to subject her to escalating unwanted touching and, when she did not submit, to threaten her academic career, ultimately orchestrating her failure on the candidacy exam when she continued to resist. Rizzoni denies any misconduct and characterizes Huang instead as an underperforming student who fabricated allegations after failing the exam.

Huang sued both OSU and Rizzoni. As to OSU, she brought Title VII quid pro quo sexual-harassment and retaliation claims, contending that she functioned as an employee while performing paid, directed research. As to Rizzoni, she asserted, among other theories, a constitutional claim based on violation of her right to bodily integrity under 42 U.S.C. § 1983.

This is the second appeal in this case. *See Huang v. The Ohio State University, et al*, 116 F.4th 541 (6th Cir. 2024). In a published opinion on the first appeal, this Court held that the district court erred by resolving Huang's employee status as a matter of law at summary judgment, emphasizing that a graduate researcher can be both a student and an employee under Title VII, that Huang's physical resistance to Rizzoni's advances qualified as protected opposition, and that the district court had improperly excluded relevant evidence. *Id*. The Court reversed the grant of summary judgment to OSU on the Title VII claims, vacated the prior verdict for Rizzoni, and remanded for a new trial with instructions, *inter alia*, that the jury "make factual findings regarding Rizzoni's disputed control over where and when Huang worked," and the district court then "decide as a matter of law whether Huang was an OSU employee" under the common-law *Darden/Bryson* framework. 116 F.4th at 559-560. Notably, the focus here was on whether Rizzoni had "de facto," rather than de jure, control over "the terms and conditions of [Huang's] work." *Id*. at 559. In other words, this Court looked to the actual facts on the ground and what the Defendants *did* control, not to what Rizzoni or OSU had the *right* to that control.

On remand, the Trial Court instead submitted a single special interrogatory to the jury asking whether OSU or Rizzoni had "the *right* to control the manner and means" by which Huang did her work from 2014 to 2017 and, based solely on the jury's "no" answer, ruled that Huang was not an employee and dismissed OSU from

the case, effectively removing her Title VII claims from the jury's reach. (Jury Verdict, R. 311, Page ID# 9565-9566 (emphasis added)).

The case proceeded thereafter only against Rizzoni on Huang's claims that he sexually assaulted and harassed her and then retaliated by derailing her Ph.D. in violation of 42 U.S.C. § 1983. The Trial Court made a series of evidentiary rulings excluding evidence relevant to these questions (as well as to the claims against OSU), including evidence of the context of widespread sexual harassment of graduate students at OSU and evidence of Huang's damages. (Trial Vol. V, R. 325-4, Page ID # 10681-10685; Trial Vol. VII, R. 325-6, Page ID # 10991-10997). The exclusion of this evidence significantly limited the context and corroboration Huang could present, including OSU-generated data on sexual assault that bore on the plausibility of her account and harms to Huang that underlined the seriousness of the damage done by Rizzoni's actions. After hearing the truncated case, the jury returned a verdict in Rizzoni's favor, and the Trial Court entered final judgment on October 8, 2025. (Judgment for Rizzoni, R. 320, Page ID # 9613).

# ARGUMENT

## I. The District Court misapplied Darden/Bryson and improperly delegated the legal employee-status determination to the jury without adequate instruction.

This appeal, as relates to OSU, turns on who decides employee status and by what process – specifically, whether the Trial Court erred in concluding that Meng Huang was not an employee of The Ohio State University and whether it erred by submitting the ultimate legal question of employee status to the jury. On prior appeal, this Court required the jury to make discrete historical findings (*e.g.*, nature of work, degree of control, compensation) and the district court to then apply the governing multi-factor standard to reach the legal determination of employee status. Instead, the Trial Court inverted that process. Factfinding and law were fused and the jury was asked, instead of making discrete factual findings which the Trial Court could use to make the determination, to weigh the factors itself and itself make the legal determination. The jury's response to the single, limited, and misstated special interrogatory was treated as the status determination itself. That structural misallocation of assigning the ultimate employee-status decision to the jury without the required (or correct) legal framework or analysis by the Court undermines the validity of the verdict and necessitates remand for properly framed factual interrogatories followed by a judicial determination of employee status under the controlling standard.

### A. Legal Standard

The decision whether to submit special interrogatories, and how they are structured, is reviewed for abuse of discretion. *Pouillon v. City of Owosso*, 206 F.3d 711, 713-14 (6th Cir. 2000); *see also Hurt v. Com. Energy, Inc.*, 973 F.3d 509, 523 (6th Cir. 2020) (reviewing the form and content of jury instructions for abuse of discretion and legal accuracy of jury instructions *de novo*). An appellate court reviews for abuse of discretion, meaning a "definite and firm conviction that the trial court committed an error of judgment," when a district court relied on clearly erroneous factual premises, misapplied governing law, or employed an erroneous legal standard. *Pouillon*, 205 F.3d at 714. Even when preservation of issues is incomplete or entirely missing, the circuit court reviews jury instructions for plain error, or an "obvious and prejudicial" error that affected substantial rights and warrants correction. *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1075–76 (6th Cir. 2015).

This case satisfies even that demanding standard. The Trial Court contravened the Sixth Circuit's clear two-step mandate by (i) delegating the ultimate legal status determination to the jury, (ii) failing to put any specific factual question to the jury, instead just listing the factors the Sixth Circuit directed the district court to weigh, (iii) failing to properly describe the legal question it did put before the jury by referring to OSU or Rizzoni's *right* to control rather than *actual* control; and (iv)

refused to clarify the jury's express confusion stated in a jury note asking whether the special interrogatory concerned "the right to do something" or "if she was an employee."[1] (Trial Vol. VII, R.325-6, Page ID # 10989). The verdict thus turned on a misstatement of the law and a conflation of factual predicates, which the jury should have decided, with the ultimate legal question. These errors taken together are clear, prejudicial to Huang, and affect Huang's substantial rights. In other words, they fit precisely the elements of plain error. *See New Breed Logistics*, 783 F.3d at 1075–76.

Separately, Huang moved for judgment as a matter of law on employee status under Rule 50(a). (Plaintiff's Motion for Judgment as a Matter of Law, R.307, Page ID # 9522-9539). Review of a district court's denial of a motion for judgment as a matter of law is *de novo*. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 488 (6th Cir. 2010) This Court may review the Trial Court's purely legal Rule 50(a) ruling notwithstanding the absence of a renewed Rule 50(b) motion. *Doherty v. City of Maryville*, 431 F. App'x 381, 385–86 (6th Cir. 2011) (distinguishing *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006)). At minimum, the judgment should be vacated and remanded for a new trial with properly framed interrogatories

[1] In fact, the correct answer should have been "neither" – this Court had directed that the district court instead put the factual questions of the factors weighed in determining actual control to the jury, not OSU and Rizzoni's rights or the ultimate legal question of whether Huang was an employee as a matter of law.

eliciting predicate facts and with correct *Darden/Bryson* instructions, followed by the court's resolution of the ultimate legal question.

### B. The district court's approach violated this Court's instructions on remand and misapplied *Darden/Bryson*.

In discussing how the Trial Court should determine the question of employment, this Court noted that in the multi-factor *Darden/Bryson* test no single factor is decisive and "the district court may consider them as a few ingredients among many in the common-law agency test," which encompasses thirteen independent factors. 116 F.4th at 557, 559; *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-324 (1992).[2] The Circuit focused on three of those thirteen factors, "the nature of Huang's work, the degree of control that OSU exerted in those

[2] In fact, even these thirteen factors are not an exhaustive list of considerations to be made in determining agency under *Darden*. In that case, a unanimous Supreme Court drew those thirteen factors from an earlier case, *Community for Creative Non-Violence v. Reid*, but did not stop there. *Darden*, 503 U.S. at 323-324; *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 751-752 (1989). Instead, *Darden* also cites the Restatement (Second) of Agency Section 220 (ten non-exclusive factors) and the IRS Cumulative Bulletin (twenty factors). Restatement (Second) of Agency § 220 (1958); IRS Cum. Bul., 1987 IRB LEXIS 254. Notably, the Third Restatement includes, in the comments, the non-exclusive factors of the Second Restatement, but adds "[a]lso relevant is the extent of control that the principal has exercised *in practice* over the details of the agent's work." Restatement (Third) of Agency § 7.07 cmt. f (2006) (emphasis added). In any case, *Darden* makes clear that "the common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, … all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" 503 U.S. at 324 (ellipsis in original)(quoting *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968)). "What is important is that the total factual context is assessed in light of the pertinent common-law agency principles." *United Ins. Co.*, 390 U.S. at 258.

endeavors, and Huang's compensation," but at no point stated that those were the *only* relevant factors. 116 F.4th at 558.

The Sixth Circuit directed a two-step analysis by the district court regarding the employee status issue raised[3] in this case: "the jury should make factual findings regarding Rizzoni's disputed control over where and when Huang worked. Once any genuine dispute is settled by the jury, the district court should decide as a matter of law whether Huang was an OSU employee, consistent with this opinion's reasoning." 116 F.4th at 559-560.

The Trial Court, however, disregarded the Sixth Circuit's instruction. Instead, it limited the jury to a single special interrogatory asking the jury not to find specific facts, but instead decide the (incorrect) legal question of whether OSU or Rizzoni had "the right to control the manner and means by which Dr. Huang accomplished her work from August 2014 to August 2017" – not only failing to put the factors before the jury discretely for factual determination, but also conflating the *right* to control with *actual* control. (Jury Verdict, R. 311, Page ID # 9565-9566). Moreover, the jury instructions failed to provide proper *Darden/Bryson*-specific guidance on making a *factual* determination as to each of the factors, instead explicitly asking the jury to weigh the factors and make a final determination: the central *legal*

[3] Employee status was not addressed during the first trial.

determination which this Court directed the *district court* to make. Trial Vol. VI R.325-5 Page ID # 10968-10969; 1119:14-1120:13 (the Trial Court: "It is your responsibility as the jury to weigh these factors, examining all incidents of the relationship between the parties."). This simply turns the direction of this Court on its head.

To be sure, trial courts have "broad discretion" over "the form and content" of Rule 49 interrogatories, *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 715 (6th Cir. 1975), but that discretion is bounded by the duty to accurately reflect the substantive law and to enable the jury to resolve only those factual questions properly entrusted to it. *See Pouillon*, 206 F.3d at 714 (abuse of discretion includes misapplication of law or use of an incorrect legal standard); *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 30 (6th Cir. 1988). In the special-interrogatory context, defective forms that combine, confuse, or misstate distinct issues can require retrial. For example, interrogatories that collapse issues "could prevent the jury from properly considering the issues" and warrant a new trial. *Rodgers v. Ohio Valley CFM, Inc.*, 774 F.2d 1163, 1985 U.S. App. LEXIS 23559, at *17–18 (6th Cir. Sep. 13, 1985). Similarly, a new trial may be warranted where a confusing

interrogatory effectively directed a verdict. *Gootee v. Colt Indus., Inc.*, 712 F.2d 1057, 1067–68 (6th Cir. 1983).[4]

While *Sperberg* explains that mixed questions can be submitted if—and only if—the jury is properly instructed on the governing law (519 F.2d at 714–15),[5] that safeguard was missing here. The district court posed a single, legally loaded "right-to-control" interrogatory and then treated the jury's answer as the resolution of the legal status. *See id.* at 715 (citing *Kissell v. Westinghouse Elec. Corp.*, 367 F.2d 375, 376 (1st Cir. 1966)).

That method conflicts with the substantive law cited by this Court as well as its the direct instruction. *Darden* requires the decisionmaker to "assess[] and weigh[]" "all of the incidents of the relationship," with "no one factor being decisive." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992) (quoting *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968)). *Bryson* likewise directs courts to examine the "incidents of the relationship." *Bryson v. Middlefield Volunteer Fire Dep't, Inc.*, 656 F.3d 348, 355 (6th Cir. 2011). Yet, the verdict form

[4] *See also Worsham v. A.H. Robins Co.*, 734 F.2d 676, 690 (11th Cir. 1984); *Petes v. Hayes*, 664 F.2d 523, 525 (5th Cir. 1981) (noting that interrogatories should be stated in a way that "avoids the potential for confusing or misleading the jury").

[5] *Sperberg*, 519 F.2d at 714–15 (approving interrogatories where factual questions were separate and the "validity" questions were surplusage in light of comprehensive instructions); *see also Merchants Fast Motor Lines, Inc. v. Lane*, 259 F.2d 336, 338 (5th Cir. 1958) (explaining that mixed questions of law and fact are permissible "only if the jury is instructed as to the legal standards which they are to apply").

collapsed those distinct *Darden/Bryson* considerations into a single "right-to-control the manner and means" question and then treated the jury's single answer as determinative of the law. That is exactly what *Darden* forbids. *See Darden*, 503 U.S. at 324; *see also Dudley v. Stonecroft Ministries, Inc.*, 142 F. Supp. 3d 653, 660-61 (S.D. Ohio 2015) (explaining, in part, that, while the court singled out three specific factors related to control, the factors must be considered and weighed collectively in determining employee status under the *Darden* test).

The prejudice is evident on the face of the record. During deliberations, the jury submitted a question, asking: "Can we have further clarification on the question we are answering? Is it more about do they have the right to do something or is the question about if she was an employee during that time?" (Trial Vol. VII, R.325-6, Page ID # 10989). The Trial Court declined to clarify, directing the jury back to instructions that did not properly answer this question and never explained that the jury's role is to determine discrete factual components rather than the dispositive legal status.[6] The jury thus equated "no right to control the manner and means" with "not an employee," and the Trial Court adopted that conflation by entering judgment for OSU based solely on the single interrogatory. That error both misapplied *Darden*

[6] While it is true that the Trial Court did refer to this as a "factual determination" several times, it also explicitly presented the question as a determination of the "right" of either or both of the Defendants, a legal question. (Trial Vol. VI, R. 326-5, Page ID # 10968-10969). It is no wonder the jury was confused and asked for clarification.

by elevating one factor – control – to dispositive status and violated the Sixth Circuit's mandate delegating the Trial Court's legal determination to the jury without any finding on any specific factual issue.

This case is therefore controlled by the principle in *Rodgers*: where a verdict form collapses distinct inquiries such that the jury cannot separately resolve the issues assigned to it, a new trial is required. 774 F.2d 1163, 1985 U.S. App. LEXIS 23559, at *17–19. The Trial Court's approach also falls outside the "broad discretion" recognized in *Sperberg*, because the it did not provide the necessary legal framework that would render the jury's mixed-question answer mere surplusage. 519 F.2d at 714-15. Therefore, the judgment on employee status should be vacated and the case remanded for a new trial with properly framed special interrogatories that elicit predicate factual findings (*e.g.*, the nature of Huang's work, degree of control, method of compensation, and other applicable *Darden/Bryson* factors), followed by the district court's resolution of the ultimate legal question.

## II. The District Court's Exclusion of Highly Probative, Relevant Evidence Deprived Huang of a Fair Trial.

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." While a court is not "permitted to consider the weight or sufficiency of the evidence in determining relevancy and 'even if [it] believes the evidence is insufficient to prove the ultimate

point for which it is offered, it may *not exclude the evidence if it has even the slightest probative worth*." *Bowman v. Vankeuren*, No. 21-cv-12845, 2025 U.S. Dist. LEXIS 250583, at *4-5 (E.D. Mich. Dec. 4, 2025) (quoting *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998)) (emphasis added). Although relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," the evidence must show "*unfair* prejudice, not just mere prejudice" since "[v]irtually all evidence is prejudicial or it isn't material." *Bowman*, No. 21-cv-12845, 2025 U.S. Dist. LEXIS 250583, at *5; *see also* Fed. R. Evid. 403; *Robinson*, 149 F.3d at 514-15. Overall, "[t]he rules regarding relevancy . . . are quite liberal[.]" *Robinson*, 149 F.3d at 512.

Evidentiary errors—including the exclusion of critical proof—are first reviewed for abuse of discretion. An abuse of discretion occurs when the district court "relies on clearly erroneous findings of fact, improperly applies the law, or employs an erroneous legal standard, or when [the reviewing court is] firmly convinced a mistake has been made." *Martin v. Polaris, Inc.*, No. 24-5852, 2025 U.S. App. LEXIS 29096, at *4–5 (6th Cir. Nov. 4, 2025); *see also United States v. Ankita Singh*, 147 F.4th 652, 661 (6th Cir. 2025); *P.I.&I. Motor Express, Inc. v. RLI Ins. Co.*, 40 F.4th 398, 416 (6th Cir. 2022).

While an evidentiary ruling may be found erroneous, however, the judgment cannot stand and reversal is be warranted unless the error was harmless. *Martin*, No. 24-5852, 2025 U.S. App. LEXIS 29096, at *5 (explaining that erroneous rulings don't always require reversal but reversing a jury's verdict is warranted only if the error "was not harmless; that is, only if it affected the outcome of the trial"). This is the harmless error standard articulated in the Supreme Court case *Kotteakos v. United States*, which the Sixth Circuit applies to civil cases. *See Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004); *Schrand v. Fed. Pacific Elec. Co.*, 851 F.2d 152, 157 (6th Cir. 1988).

In applying this standard, the appellate court examines the record and the proceedings in their entirety, "pondering all that happened without stripping the erroneous action from the whole," to determine whether it has "fair assurance" that the verdict was not "substantially swayed" by the error. *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). Thus, an evidentiary error is harmless only if it did not affect the party's substantial rights or the outcome of the trial—if, in practical terms, it "did not influence, or only slightly influenced, the verdict." *Martin*, No. 24-5852, 2025 U.S. App. LEXIS 29096, at *5. "Application of this test is highly sensitive to the unique context of the particular case, including the one-sided or closely balanced nature of the evidence bearing upon the issue which the error arguably affected; and the centrality of that issue to the ultimate decision." *Schrand*, 851 F.2d at 157.

Reversal is appropriate where erroneous exclusions/admissions distort the trial on core issues or cumulatively deprive a party of a fair trial.[7] *Beck*, 377 F.3d at 643-44 (6th Cir. 2004).

**A. Exclusion of Plaintiff's Exhibit 20 – OSU Campus Survey on Instances of Sexual Assault and Harassment Among Graduate Students**

The Trial Court erred in excluding the campus climate survey (Trial Vol. V, R. 325-4, Page ID # 10681-10685) that gave key context regarding the prevalence of the kind of harassment engaged in by Rizzoni because that ruling affected the verdict and therefore cannot be treated as harmless. The survey went directly to a central trial issue: whether Huang's account of sexual assault and its aftermath was plausible in OSU's campus environment. By demonstrating that, according to OSU's own survey, a significant share of university students reported experiencing sexual assault, both Huang's account of Rizzoni unwanted touching and the testimony of another witness, Physician Shiela Westendorf, about OSU students she treated who had been sexually assaulted during her tenure would be made significantly more plausible for the jury. (Trial Vol. III, R. 325-2, Page ID # 10353).

---

[7] Reversal may be avoided where the exclusion is harmless because substantially equivalent evidence reached the jury through other means. *Leonard v. Uniroyal, Inc.*, 765 F.2d 560, 566-568 (6th Cir. 1985); *see also Martin*, No. 24-5852, 2025 U.S. App. LEXIS 29096, at *5 (explaining that reversal is required only if the error was not harmless, *i.e.*, if it affected the outcome of the trial). That did not occur here, however.

Unlike generic social-science material, the survey was specific to the same institution and student population as Huang, and it would have materially strengthened the jury's ability to assess credibility, recognize patterns of under-reporting, and understand that Huang's experience was not an isolated or implausible claim. Excluding that evidence deprived the jury of context bearing directly on a critical disputed issue and thus "affect[ed] the substantial rights" of the plaintiff.

The error was also not harmless. The survey was not cumulative; it uniquely quantified, using OSU's own data, the prevalence of sexual assault among the student population to which Huang belonged. This information, therefore, could not be put before the jury in any comparable way by other evidence. While Drs. Westendorf and Deschenes testified about treating other students who experienced sexual assault, their anecdotal clinical experience, while powerful and relevant, is not a substitute for institution-wide empirical data showing how common such misconduct was and how frequently it went unreported. (Trial Vol. V, R.325-4, Page ID # 10751; Trial Vol. III, R. 325-2, Page ID # 10353). It is, in fact, exactly the evidence necessary and relevant to counter Rizzoni and OSU's efforts to portray Huang's allegations as fabricated.

This case is directly in line with *Beck*. In *Beck*, this Court reversed when the district court excluded unique, central evidence that went to the heart of liability and

nothing else in the record served the same function. The campus survey in Huang played the same kind of role: OSU-specific, empirical proof of how common sexual assault was among Huang's peers, powerfully corroborating both her narrative and Psychiatrist Dr. Deschenes's account of patterns of assault and under-reporting. (Trial Vol. V, R.325-4, Page ID # 10751). No comparable institution-wide data or OSU-generated statistics came in through any other witness or exhibit, and anecdotal testimony that "other students were assaulted" is not an adequate substitute for the university's own prevalence data.

Accordingly, because the exclusions here concerned central, non-cumulative proof and materially narrowed the case presented to the jury, the errors were not harmless and require vacatur and remand for a new trial.

**B. Exclusion of Economic Damages Evidence**

In *Andler v. Clear Channel*, the Sixth Circuit held that a district court abused its discretion by excluding a plaintiff's lost-earning-capacity expert where the methodology, though imperfect, was not "unreasonably speculative," emphasizing that future economic damages need only be proven with "reasonable certainty," not mathematical precision. 670 F.3d 717, 721, 727 (6th Cir. 2012) (reversing exclusion of expert and remanding for new trial on damages). Likewise, in *Tezak v. Montgomery Ward*, the Sixth Circuit reversed a zero-economic-damages verdict and ordered a new trial limited to economic loss where the jury ignored uncontroverted

proof of stipulated medical expenses, holding, under controlling Michigan law, that such a verdict was “inadequate on its face and must be reversed.” 33 F. App’x 172, 176-78 (6th Cir. 2002).

Here, the Trial Court went even further by categorically precluding Huang from presenting *any* economic-damages case on lost wages because it found that she had not offered non-speculative proof of causation and amount. (Trial Vol. VII, R. 325-6, Page ID # 10991-10997). There was evidence from which a reasonable jury could estimate lost earnings with reasonable certainty (her testimony about when she expected to graduate and work, her account of why she stopped working, her hiring at TAE, and Ford’s interest and later offer). (Trial Vol. III, R.325-2, Page ID # 10398, 10457-10458; Trial Vol. IV, R.325-3, Page ID # 10672; Trial Vol. II, R.325-1, Page ID # 10208). By calling that “mere speculation” and removing all lost-wage categories, the court applied too demanding a standard and invaded the jury’s role.

Second, lost wages were a major part of Huang’s damages theory previewed in the opening (*See* Plaintiff’s Opening Statement Trial Vol. I, R. 325, Page ID # 9975), and the Trial Court’s ruling barred the jury from awarding any economic loss at all. That significantly reduced the potential recovery and likely affected how the jury viewed the seriousness and real-world impact of the misconduct. Because a whole, legally valid category of damages was wrongly withheld from the jury, the error affected substantial rights and is not harmless. Indeed, by improperly excluding

this evidence, the Trial Court sent a clear, but improper and incorrect, message to the jury, which happened to be the same as the Defendants' litigation position: that Huang was overreacting. After all, if she didn't suffer any economic loss, how bad could her treatment have really been?

Under *Andler* and *Tezak*, excluding this category of damages wholesale rather than allowing the jury to weigh Huang's proof under the deferential "reasonable certainty" standard was an abuse of discretion that materially undercut her damages case and warrants a new trial.

### C. The Exclusion of the Campus Survey and the Damages Evidence Had A Cumulative Prejudicial Effect

*Beck* focuses not only on the individual effects of the exclusion of evidence, but also centrally on the *cumulative* effect of choices by the Trial Court to exclude multiple categories of evidence and, by doing so, multiply the prejudice to a party beyond what would have been caused by the exclusion of only one piece or category of evidence. "Since a jury reaches its verdict in light of the evidence as a whole, it makes no sense to try to analyze errors in artificial isolation, when deciding whether they were harmless." *Beck*, 377 F.3d at 645.

Again, *Beck* fits closely here. Huang's credibility was central to her case, and convincing the jury that she was not credible was central to the Defendants'. Given Huang's testimony about the assaults and retaliation she suffered, the jury could only have found as it did if it concluded that testimony lacked credibility. That the Trial

Court excluded two important forms of corroboration of her testimony, showing the campus climate in which her claims were deeply plausible and the harms that she suffered as a result, therefore was in no way harmless. The jury had to decide who to believe. By stripping away multiple forms of corroboration, the Trial Court denied it the context it needed to do so, not only in one area, but multiple. In this context, this Court cannot have "a 'fair assurance' that the verdict below was not substantially swayed by error." *Beck*, 377 F.3d at 645.

The result must necessarily be reversal and remand for a new trial with these categories of relevant evidence presented to a jury so it can make its factual findings with full context and the relevant and admissible corroboration of Huang's testimony.

## CONCLUSION

Because the Trial Court improperly put a legal question to the jury in direct contravention of this Court's instructions; and because the Trial Court improperly excluded relevant evidence with the cumulative effect of swaying the jury's final determination – or, at best, ensuring that this Court cannot be fairly assured that was not the effect – Appellant Meng Huang asks that the Court vacate the judgment and verdict below and remand for a new trial.

Date: April 6, 2026

*/s/D. McArdle Booker, Esq.*
Bruce C. Fox
bruce.fox@obermayer.com
Andrew J. Horowitz
andrew.horowitz@obermayer.com
D. McArdle Booker
mcardle.booker@obermayer.com
Obermayer Rebmann Maxwell &
Hippel LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
Tel: (412) 566-1500

*Attorneys for Appellant*
*Meng Huang*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,192 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word, Times New Roman 14-point font.

Date: April 6, 2026

*/s/D. McArdle Booker, Esquire*
D. McArdle Booker
*Attorney for Appellant Meng Huang*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of April, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: April 6, 2026

*/s/D. McArdle Booker, Esq.*
D. McArdle Booker

## ADDENDUM – DESIGNATION OF DOCUMENTS

| Title | R. and PAGEID Range |
|---|---|
| Plaintiff's Motion for Judgment as a Matter of Law | R.307, Page ID # 9522-9539 |
| Jury Verdict on Issue of Employee Status | R.311, Page ID # 9565-9566 |
| Judgment in Favor of Rizzoni | R.320, Page ID # 9613 |
| Amended Notice of Appeal | R.322, Page ID # 9616-9617 |
| Trial Transcript Vol. I | R.325, Page ID # 9975 |
| Trial Transcript Vol. II | R.325-1, Page ID # 10208 |
| Trial Transcript Vol. III | R.325-2, Page ID # 10352-10353, 10398, 10457-10458 |
| Trial Transcript Vol. IV | R.325-3, Page ID # 10672 |
| Trial Transcript Vol. V | R.325-4, Page ID #10681-10685, 10751, 10769-10771 |
| Trial Transcript Vol. VI | R. 325-5, Page ID # 10968-10969 |
| Trial Transcript Vol. VII | R.325-6, Page ID # 10989, 10991-10997 |