Case No. 25-3903

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MENG HUANG

Plaintiff-Appellant

v

OHIO STATE UNIVERSITY; GIORGIO RIZZONI

Defendants-Appellees

Appeal from the United States District Court
Southern District of Ohio
Case No. 2:19-cv-01976

**DEFENDANTS-APPELLEES THE OHIO STATE UNIVERSITY AND GIORGIO RIZZONI'S BRIEF ON APPEAL**

**CERTIFICATE OF COMPLIANCE/CERTIFICATE OF SERVICE**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

JEFFREY C. GERISH
CHRISTINA L. CORL
Attorneys for Defendants-Appellees
38505 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 901-4031
jgerish@plunkettcooney.com
ccorl@plunkettcooney.com

## CORPORATE DISCLOSURE

Pursuant to Sixth Circuit Rule 26.1, Defendants-Appellees The Ohio State University and Giorgio Rizzoni, make the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation. No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? No.

DATED: June 26, 2026

/s/Jeffrey C. Gerish
Jeffrey C. Gerish

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ... iii

STATEMENT REGARDING ORAL ARGUMENT ... vi

COUNTER-STATEMENT OF ISSUES PRESENTED ... 1

COUNTER-STATEMENT OF THE CASE ... 2

A. Introduction ... 2

B. Summary of substantive facts and proceedings. ... 3

C. Proceedings pertaining to issues now on appeal ... 6

1. Proceedings pertaining to the special-interrogatory issue. ... 6

2. Proceedings on the motion in limine and the motion on lost wages ... 9

SUMMARY OF ARGUMENT ... 11

ARGUMENT I ... 13

HUANG FAILED TO DEMONSTRATE THAT THE TRIAL COURT COMMITTED OBVIOUS AND PREJUDICIAL ERROR THAT AFFECTED HUANG'S SUBSTANTIAL RIGHTS THROUGH THE JURY INSTRUCTIONS AND SPECIAL INTERROGATORY SUBMITTED TO THE JURY ON THE "EMPLOYEE" ISSUE, WHERE HUANG WAIVED ANY OBJECTION TO THE INSTRUCTIONS AND INTERROGATORY BY FAILING TO CHALLENGE THEM BELOW. ... 13

A. Standard of review. ... 13

B. Application ... 15

1. This Court should decline to review Huang's alleged instructional error. ... 15

2. The special verdict form and jury instructions do not reflect error. ... 17

3. Any error was not plain, i.e., obvious or clear. ... 22

4. Huang has not demonstrated entitlement to a new trial even if there were plain error. ... 25

ARGUMENT II ............ 28

HUANG HAS FAILED TO DEMONSTRATE THAT THE TRIAL COURT ABUSED ITS DISCRETION CAUSING HARM WARRANTING A NEW TRIAL BY EXCLUDING FROM EVIDENCE A CAMPUS SURVEY ON INSTANCES OF SEXUAL ASSAULT AND HARASSMENT GENERALLY, AND BY PRECLUDING A LOST-WAGES DAMAGES AWARD ............ 28

A. Standard of review. ............ 28

B. Application ............ 29

1. Exclusion of the OSU campus survey was correct and did not deprive Huang of a fair trial ............ 29

a. The Trial Court's ruling was correct and not an abuse of discretion. ............ 29

b. Even if erroneous, the ruling did not deprive Huang of a fair trial. ............ 31

2. Preclusion of lost-wages damages was correct and did not deprive Huang of a fair trial ............ 33

a. The Trial Court's ruling was correct and not an abuse of discretion. ............ 34

b. Even if erroneous, the ruling did not deprive Huang of a fair trial. ............ 36

RELIEF ............ 38

CERTIFICATE OF COMPLIANCE ............ 1

CERTIFICATE OF SERVICE ............ 1

ADDENDUM – DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ............ 1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Alsobrook v. UPS Ground Freight, Inc.*,
352 Fed. Appx. 1 (6th Cir. 2009)....................14, 25, 26

*Beck v. Haik*,
377 F.3d 624 (6th Cir. 2004)....................29, 32, 33

*Christopher v. Stouder Mem'l Hosp.*,
936 F.2d 870 (6th Cir.1991) .................... 34

*Eid v. Saint-Gobain Abrasives, Inc.*,
377 Fed. Appx. 438 (6th Cir. 2010) ....................14, 15, 22, 23, 24

*Gootee v. Colt Industries, Inc.*,
712 F.2d 1057 (6th Cir. 1983) .................... 21

*Huang v. Ohio State University*,
116 F. 4th 541 (6th Cir. 2024).................... 6, 17, 18, 20, 21

*Kotteakos v. United States*,
328 U.S. 750 (1946).................... 29

*Lee v. Metropolitan Government of Nashville and Davidson County*,
432 Fed. Appx. 435 (6th Cir. 2011) ....................14, 15, 16, 25, 28

*Maday v. Pub. Libraries of Saginaw*,
480 F.3d 815 (6th Cir. 2007).................... 14

*McMahon v. Libbey–Owens–Ford Co.*,
870 F.2d 1073 (6th Cir.1989).................... 34

*Mesman v. Crane Pro Servs.*,
512 F.3d 352 (7th Cir. 2008).................... 26

*Molina V. Martienz v. United States*,
578 U.S. 189 (2016).................... 15

*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318 (1992).................... 7, 18, 19

*Nolan v. Memphis City Schs.*,
589 F.3d 257 (6th Cir. 2009).................... 28

*Pivnick v. White, Getgey & Meyer Co., LPA*,
552 F.3d 479 (6th Cir. 2009) ........ 25

*Pouillon v. City of Owosso*,
206 F.3d 711 (6th Cir. 2000) ........ 13

*Preferred RX, Inc. v. American Prescription Plan, Inc.*,
46 F.3d 535 (6th Cir. 1995) ........ 16

*Reynolds v. Green*,
184 F.3d 589 (6th Cir. 1999) ........ 16, 22

*Rodgers v. Ohio Valley CFM, Inc.*,
774 F.2d 1163 (6th Cir. 1985) ........ 21, 23, 24

*Scott v. Miller*,
361 Fed. Appx. 650 (6th Cir. 2010) ........ 24

*Sperberg v. Goodyear Tire & Rubber Co.*,
519 F.2d 708 (6th Cir. 1975) ........ 22

*Szeinbach v. Ohio State Univ.*,
820 F.3d 814 (6th Cir. 2016) ........ 34, 35, 36

*Tompkins v. Philip Morris USA, Inc.*,
362 F.3d 882 (6th Cir. 2004) ........ 28

*United States v. Bauer*,
82 F.4th 522 (6th Cir. 2023) ........ 13, 14

*United States v. Emmons*,
8 F.4th 454 (6th Cir. 2021) ........ 13

*United States v. Howard*,
947 F.3d 936 (6th Cir. 2020) ........ 14

*United States v. Vonner*,
516 F.3d 382 (6th Cir. 2008) (en banc) ........ 14

*United States v. Williams*,
612 F.3d 500 (6th Cir. 2010) ........ 13

**STATUTES**

42 U.S.C. § 1983 ........ 4

**RULES**

F.R.E. 403 ........ 31

Fed. R. Civ. P. 51 ........ 15, 16

Fed. R. Civ. P. 51(d)(2) .......... 14

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees The Ohio State University ("OSU") and Giorgio Rizzoni ("Defendants") do not believe oral argument is necessary in this appeal, but they request oral argument in the event the Court has questions of counsel or wishes to hear oral argument. Defendants disagree with the statement in Plaintiff-Appellant Meng Huang's ("Huang") Statement in Support of Oral Argument that the issues in this appeal are "numerous and complex." Huang's appeal raises just three issues, a challenge to a special interrogatory, a single evidentiary ruling, and a ruling on a damages question, none of which is particularly complex.

## COUNTER-STATEMENT OF ISSUES PRESENTED

I.

Has Huang failed to demonstrate that the Trial Court committed obvious and prejudicial error that affected Huang's substantial rights through the jury instructions and special interrogatory submitted to the jury on the "employee" issue, where Huang waived any objection by failing to challenge them below?

II.

Has Huang failed to demonstrate that the Trial Court abused its discretion causing harm warranting a new trial by excluding from evidence a campus survey on instances of sexual assault and harassment generally, and by precluding a lost-wages damages award?

## COUNTER-STATEMENT OF THE CASE

### A. Introduction

Huang's "statement of the case" is more properly characterized as a statement of her allegations and of a procedural posture that is belied by the record. She claims, without any record citation, that this is a case "about the exercise of power and acts of retaliation in higher education," and that she was a Ph.D student at OSU whose advisor, Defendant Rizzoni, "used that power first to sexually harass her and then to end her career when she resisted." (Huang's brief, p 8) (*Id.*). But that claim has now been tried to two different juries, and neither jury believed her; both juries found in favor of Rizzoni on those allegations.

Regarding the second trial, on remand from this Court, Huang claims the Trial Court "walled off the story of the exercise of power, of Rizzoni's threats to derail Huang's academic career, his unprecedented manipulation of her candidacy exam, and her stellar academic record that directly rebutted his claim she fabricated her allegations as a poor performer seeking revenge." (Plaintiff's brief, pp 8-9). But nowhere in her brief does Huang offer any support for that broad, strident criticism of the Trial Court. Her arguments are not even aimed at a supposed "wall[ing] off" of her story; the only errors she asserts on appeal are an alleged error with a special interrogatory to the

jury, the exclusion of a general campus survey on sexual assault and harassment, and a ruling precluding an award of lost wages—none of which bears any relation to that accusation.

In fact, the few alleged errors by the Trial Court that Huang claims warrant a new trial were not errors at all; all three represent correct rulings that certainly were well within the Trial Court's discretion, which is the deferential standard of review that Huang concedes applies. And even if the Trial Court had abused its discretion, none of the alleged errors—nor all three of them collectively—deprived Huang of a fair trial. For any of several reasons, there is no basis for a new trial and, consequently, this Court should affirm.

## B. Summary of substantive facts and proceedings.

While Huang's brief offers no discussion of the substantive facts of this case, a brief summary may assist the Court in understanding the nature of the case. After she failed her Ph.D candidacy exam at OSU, Huang reported for the first time a years-long pattern of sexual assault by her Ph.D. advisor, Rizzoni, allegations that later gave rise to this lawsuit. Huang claims Rizzoni began sexually assaulting her on the day they met in 2013, for some four hours, after which she not only told no one, but she decided to pursue her Ph.D at OSU with Rizzoni as her supervisor rather than choose another school. And she claims Rizzoni continued to assault her repeatedly for years while he was her

advisor. Yet Huang never told a single person about it until after a full examination committee unanimously voted that she failed her Ph.D. Candidacy Exam in December 2017.

When she finally notified OSU of the alleged sexual assaults OSU immediately took action to address the claim, including through reassigning Rizzoni off campus pending an HR investigation and providing Huang with supportive resources as well as an additional opportunity to take her candidacy examination. The HR investigation was exhaustive, with over thirty witnesses interviewed, and the investigators ultimately concluded that Huang's claims were unsubstantiated. Indeed, not a single witness corroborated any of her allegations. Despite these findings, OSU nevertheless continued to provide Huang with supportive measures as noted above throughout the remainder of her academic career at the university, which ended when she eventually graduated with her Ph.D. in 2019.

Huang then filed this lawsuit alleging numerous claims, but only two are relevant to her appeal: (1) Title VII quid-pro-quo sexual harassment; and (2) interference with Plaintiff's substantive due process right to bodily integrity (unwanted sexual touching) under 42 U.S.C. § 1983 against Rizzoni. In May 2023, after the Title VII claim was dismissed on summary judgment (on the grounds that Huang was not an employee), the unwanted-touching case was

tried to a jury, which quickly returned a verdict that Huang failed to prove even a single instance of non-consensual, sexual touching.

As Huang notes, she appealed from the judgment entered following the first trial. This Court reversed and remanded, finding there was a question of fact as to whether Huang was an employee at the same time she was a student, and that the trial court erred in the manner in which it bifurcated the claims for trial.

On remand, the unwanted-touching claim was tried again, along with the factual issues underlying whether Huang was an employee, before a different trial judge. A second jury again found no merit to Huang's allegations of sexual harassment by Rizzoni. That jury also reached the factual finding that neither OSU nor Rizzoni had the right to control the manner and means by which Huang accomplished her work from August 2014 to August 2017, which resulted in the Trial Court's ruling that Huang was not an employee during that time. Huang now appeals again, but limits her arguments to an alleged error with a special interrogatory, a single evidentiary ruling, and a ruling precluding an award of lost wages.

### C. Proceedings pertaining to issues now on appeal.

#### 1. Proceedings pertaining to the special-interrogatory issue.

Proceedings relevant to the issue with the special interrogatory begin with this Court's opinion resolving the prior appeal and its instructions to the Trial Court for proceeding on remand. In that opinion, the Court reversed the grant of summary judgment in favor of Defendants on Huang's Title VII claim, which was predicated on the grounds that Huang was a student and not an employee between August 2014 and August 2017. This Court held that the Trial Court was mistaken to make that determination at the summary judgment stage. *Huang v. Ohio State University*, 116 F. 4th 541, 555 (6th Cir. 2024).

On the issue of whether Huang was an employee, this Court held that "[t]he 'crux' of the test requires the court to consider the scope of OSU and Rizzoni's 'right to control the manner and means by which' Huang accomplished the work of her Ph. D. program." *Huang*, 116 F.4th at 556. (citations omitted). The Court determined that a person's status as a student does not necessarily resolve whether she also was an employee; instead, a person can be both. The Court then repeated that:

> [t]o determine whether this relationship made Huang "an employee under the common law of agency," the Supreme Court

> has instructed that our task is to evaluate OSU's "right to control the manner and means by which the product is accomplished."

*Id*. at 557, quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992).

The Court went on to identify a number of factors that can be considered in determining whether an entity has the right to control the manner and means by which work is done. *Id*. The Court also discussed several of those factors as applied to the circumstances of this case when construing the facts in the light most favorable to Huang. Ultimately, the Court concluded that Huang had "met her burden to create a genuine dispute of material fact as to whether she was an OSU 'employee' under Title VII when she suffered Rizzoni's purported harassment, from August 2014 to December 2017." *Id*. at 559. The Court remanded with instructions that the jury should resolve the factual issue pertaining to the control over Huang's work. *Id*.

The case was tried on remand before a different trial judge. After the submission of proofs, and with the approval of Huang's counsel, the Trial Court instructed the jury on the issue of fact pertaining to control of work that underlies the legal question whether Huang was an employee during the relevant timeframe as follows:

> A student's academic work can overlap with employment work. Student and employee are not mutually exclusive categories under Title VII.

In your initial deliberations, you must make a factual determination regarding whether Dr. Rizzoni and OSU had the right to control the manner and means by which Dr. Huang accomplished her research.

There are many factors you may consider in making this factual determination.

You must ignore how the parties characterize the relationship. Titles are not controlling as to whether OSU and Dr. Rizzoni had the right to control the manner and means by which Dr. Huang accomplished her research.

Rather, relevant factors include the nature of Dr. Huang's work; how much control Ohio State actually exercised over where and when she worked; the skill required to accomplish Dr. Huang's research; whether OSU and/or Dr. Rizzoni provided Dr. Huang with the instrumentalities and tools for her research; the location of where Dr. Huang performed her research; the duration of the relationship between the parties; whether OSU and Dr. Rizzoni had the right to assign additional projects to Dr. Huang; the extent of Dr. Huang's discretion over when and how long she worked; the method of payment; whether Dr. Huang played a role in hiring and paying any assistants; whether Dr. Huang's research was part of the regular business of Ohio State; whether Ohio State is in business; the provision of employee benefits; the tax treatment of Dr. Huang; and whether Dr. Huang was compensated or received benefits in the same manner as those who are considered by OSU to be employees.

Some of these factors may be more or less relevant.

It is your responsibility as the jury to weigh these factors, examining all incidents of the relationship between the parties.

That concludes the part of my instructions explaining the factual dispute for you to decide.

Tr. Vol. VI, pp 1119-1120, RE 325-5, PageID.10968-10969.

The jury then received a special verdict form, again with the approval of Huang's counsel, which asked them to answer the following question:

> Did Ohio State University or its agent Dr. Rizzoni have the right to control the manner and means by which Dr. Huang accomplished her work from August 2014 to August 2017?

RE 311, PageID.9565. The jury answered the question "no." Thereafter, the trial court ruled, based on the jury's answer, that Huang was not an employee during the relevant time frame.

### 2. Proceedings on the motion in limine and the motion on lost wages.

The evidentiary ruling Huang raises on appeal involves a ruling excluding an annual campus climate survey that OSU instituted around 2015. Argument on that issue is found at Volume V of the transcript, RE 325-4, PageID.10681-10685. Huang's counsel argued that the jury should hear evidence of that survey because, he claimed, it showed that it is not uncommon for a person not to report sexual harassment or sexual assault shortly after it occurs. *Id.*, PageID.10682. The arguments presented on that issue are set forth here in full for the Court's convenience:

> THE COURT: And how -- how do these statistics make it more likely that her statements are true?

> MR. HOROWITZ: It more goes to the fact that, you know, OSU knew that these issues were a -- a problem on campus, specifically with regard to graduate students, and it suggests that, frankly, there's an epidemic.
>
> THE COURT: Ms. Corl.
>
> MS. CORL: Your Honor, first of all . . . Dr. Huang has already testified about the reasons that she didn't report.
>
> The reasons that other people don't report have absolutely nothing to do with this case. It's completely irrelevant. And, frankly, these statistics don't make any fact in this case more or less likely to be true or untrue. This is just a survey of people that have nothing to do with this case.
>
> The other issue is, Your Honor, we don't know anything about this survey.
>
> We don't -- I mean, typically, if you are putting in statistics like this, you need someone to testify about the sample, did you talk to five people, did you talk to 500 people. We don't know how reliable this is. We don't know anything about it. And even if we did, it's not relevant. Thank you, Your Honor.

(RE 325-4, PageID.10683-10684). The Trial Court sustained Defendants' objection and excluded the survey. (*Id.*, PageID.10684).

Huang's final issue pertains to the Trial Court's ruling that Huang would not be permitted to recover lost wages on the grounds that her proofs were too speculative. But that was not a ruling precluding evidence, contrary to Huang's statement in the Issue Presented that the Trial Court excluded "evidence probative of economic damages." (Huang's brief, p 8). That ruling

was not made until after the proofs were closed, and it was a ruling that the evidence submitted was insufficient to allow Huang to recover lost wages—not a ruling precluding presentation of such evidence. (Tr. Vol VII, RE 325-6, PageID.10991-10997).

## SUMMARY OF ARGUMENT

None of the three purported errors by the Trial Court in conducting the trial on remand comes close to warranting the grant of a new trial. Huang's first argument, that the trial court committed error in connection with the special verdict form, was waived, as Huang never objected to the form in the Trial Court. Aside from being waived, the argument is wholly without merit; the Trial Court instructed the jury and submitted a verdict form in a manner precisely consistent with this Court's instructions on remand—which likely explains why Huang made no objection either to the instructions or to the special verdict form. And even if the Trial Court had erred, any such error comes nowhere close to warranting the grant of a new trial under the plain-error standard that applies.

Huang's request for a new trial based on two allegedly erroneous evidentiary rulings fares no better. The Trial Court correctly excluded the campus survey, and certainly did not abuse its discretion in doing so, since

that purported evidence had no bearing on the particular facts of this case. And even if that ruling constituted an abuse of discretion, no new trial is warranted.

Huang's argument that the Trial Court abused its discretion in ruling on the lost-wages issue such that a new trial is required fails to understand the ruling. Aside from the fact it ruled correctly, the Trial Court did not, as Huang suggests, preclude evidence of lost wages. The court allowed the jury to hear all such evidence, then ruled that the evidence was too speculative to allow an award of lost wages. Since the jury found no liability, the lost-wages ruling was rendered moot and quite clearly does not constitute a basis for the grant of a new trial, even if the ruling were erroneous.

## ARGUMENT I

**HUANG FAILED TO DEMONSTRATE THAT THE TRIAL COURT COMMITTED OBVIOUS AND PREJUDICIAL ERROR THAT AFFECTED HUANG'S SUBSTANTIAL RIGHTS THROUGH THE JURY INSTRUCTIONS AND SPECIAL INTERROGATORY SUBMITTED TO THE JURY ON THE "EMPLOYEE" ISSUE, WHERE HUANG WAIVED ANY OBJECTION TO THE INSTRUCTIONS AND INTERROGATORY BY FAILING TO CHALLENGE THEM BELOW.**

### A. Standard of review.

Huang correctly acknowledges that the decision whether to submit special interrogatories and how they are structured is reviewed for abuse of discretion. (Huang's brief, p 14, citing *Pouillon v. City of Owosso*, 206 F.3d 711, 713-714 (6th Cir. 2000)). This Court reviews challenges to jury instructions under the abuse of discretion standard as well. *United States v. Bauer*, 82 F.4th 522, 529 (6th Cir. 2023); *United States v. Williams*, 612 F.3d 500, 506 (6th Cir. 2010). In conducting that review, this Court must determine whether the instructions as a whole adequately informed the jury of relevant considerations and "provided a basis in law for aiding the jury in reaching its decision." *Bauer*, 82 F.4th at 529-530, quoting *United States v. Emmons*, 8 F.4th 454, 470 (6th Cir. 2021) (other citations omitted).

Importantly here, Huang failed to object to the instructions (or to the special interrogatory) at trial. As such, this Court's review is discretionary.

*Eid v. Saint-Gobain Abrasives, Inc.*, 377 Fed. Appx. 438 (6th Cir. 2010), citing Fed. R. Civ. P. 51(d)(2), and if this Court exercises its discretion to review that waived error, it does so under the plain-error standard. *Bauer*, 82 F.4th at 530. See also *United States v. Howard*, 947 F.3d 936, 944-45 (6th Cir. 2020) (applying the plain error standard where defendant challenged jury instructions he jointly submitted with government). Plain error is a "very high standard," *Maday v. Pub. Libraries of Saginaw*, 480 F.3d 815, 820 (6th Cir. 2007), which the appellant bears the heavy burden of establishing. *Eid*, 377 Fed. Appx 442. In addition to constituting a very high standard in general, "the plain error standard is less likely to be met in civil cases than in criminal cases." *Lee v. Metropolitan Government of Nashville and Davidson County*, 432 Fed. Appx. 435, 449 (6th Cir. 2011), citing *Alsobrook v. UPS Ground Freight, Inc.*, 352 Fed. Appx. 1, 2 (6th Cir. 2009).

The plain error standard requires "(1) an error, (2) that was obvious or clear, (3) that affected the [party's] substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Bauer*, 82 F.4th at 530; *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). An error affects a party's substantial rights only when there is a reasonable probability that, but for the error, the outcome of the proceeding would have

been different. *Bauer*, 82 F.4th at 530, citing *Molina V. Martienz v. United States*, 578 U.S. 189, 194 (2016) (punctuation omitted).

## B. Application

Because Huang did not object to the special verdict form or to the jury instructions, this Court has discretion whether even to review the error, and, if it does, review is under the plain error rule. Huang has come nowhere close to meeting her burden and demonstrating entitlement to a new trial. The instructions and verdict form were correct and not erroneous. They certainly do not reflect obvious or clear error of the type that would meet the plain error test—even taking Huang's argument on its face. Nor has Huang made any showing that the alleged error affected her substantial rights or otherwise warrant a new trial.

### 1. This Court should decline to review Huang's alleged instructional error.

As noted, where, as here, a party has failed to preserve a claim of instructional error for appeal, this Court's review "is discretionary, and only for plain error that affected [plaintiff's] substantial rights." *Eid*, 377 Fed. Appx. at 442. In *Lee*, this Court found it appropriate to decline to review the plaintiff's alleged instructional error. *Id*. at 451. The Court reasoned that the purpose of Fed. R. Civ. P. 51 "is to give the district court an opportunity to

correct errors in the jury instructions and to lessen the burden on the appellate courts." *Id*. at 451, citing *Reynolds v. Green*, 184 F.3d 589, 595 (6th Cir. 1999) (punctuation omitted). *See also Preferred RX, Inc. v. American Prescription Plan, Inc.*, 46 F.3d 535, 547 (6th Cir. 1995) ("The basic purpose of Rule 51 is to alert the trial judge to potential problem areas so that the jury can be clearly and correctly instructed."). "This rule was not intended to require pointless formalities, but rather was designed to prevent unnecessary new trials caused by errors in jury instructions that the district court could have corrected if timely brought to its attention." *Lee*, 432 Fed. Appx. at 451, quoting *Reynolds*, 184 F.3d at 595.

Based on the purpose of Rule 51, to allow a trial judge the opportunity to resolve correctable errors, the Court in *Lee* declined to address the plaintiff's unpreserved argument for reversal on appeal based on an instructional error.

As the Court did in *Lee*, this Court should find it appropriate to decline to review Huang's alleged error in connection with the instructions and special verdict form. If anything, this case presents an even more compelling context for doing so, since Huang initially did not even order the transcript of

proceedings, and, thus, was prepared to waive her ability to raise the argument at all.[1]

### 2. The special verdict form and jury instructions do not reflect error.

If the Court reviews the issue it should conclude that the Trial Court simply did not err in connection with the special verdict form and the jury instructions on the issue. Indeed, the Trial Court's approach was perfectly consistent with this Court's instructions on remand, contrary to Huang's confusing argument that the trial court failed to comply with those instructions.

The question put to the jury in the special verdict form is, "Did Ohio State University or its agent Dr. Rizzoni have the right to control the manner and means by which Dr. Huang accomplished her work from August 2014 to August 2017?" That question was taken *verbatim* from this Court's opinion. As this Court put it, "The 'crux' of the test requires the court to consider the scope of OSU and Rizzoni's '*right to control the manner and means by which' Huang accomplished the work of her Ph. D. program*." *Huang*, 116 F.4th at 556

---

[1] Defendants moved to dismiss this appeal based on the failure to order the transcript shortly before Huang was to file her brief. Huang only ordered the transcript after the motion was filed. This Court issued an order referring the decision on that motion to the merits panel. (January 30, 2026, Order referring Defendants' motion to dismiss to merits panel).

(emphasis added). *See also id*. at 557 (noting that the Supreme Court in *Darden* "has instructed that our task is to evaluate OSU's 'right to control the manner and means by which the product is accomplished.'") Inasmuch as the Trial Court's special verdict form was taken verbatim from this Court's articulation of the test the jury was to consider, Huang's argument that the Trial Court "disregarded" this Court's instructions (Huang's brief, p 17) is not merely without merit, it flies in the face of the text of this Court's opinion.

This Court also identified thirteen factors that can be considered in analyzing an employer's right to control the manner and means by which work is done. Those factors were quoted by the Court as follows:

> [1] the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are [2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; [13] and the tax treatment of the hired party.

*Huang*, 116 F.4th at 557, quoting *Darden*, 503 U.S. at 323-324. The Court concluded its discussion of the issue by stating, "At trial, the jury should make

factual findings regarding Rizzoni's disputed control over where and when Huang worked. Once any genuine dispute is settled by the jury, the district court should decide as a matter of law whether Huang was an OSU employee, consistent with this opinion's reasoning." *Id*. at 559-560.

That is *precisely* what happened on remand. The Trial Court submitted, verbatim, the factual question that this Court said represents the "crux" of the test for determining whether Huang was an employee. The Court also read—again, essentially verbatim—the very factors this Court listed from *Darden* for the jury to consider in answering the "crux" question. (*See supra,* pp 7-8).

Huang's argument on appeal that the Trial Court "disregarded" this Court's instruction (Huang's brief, p 17) is simply wrong. And her description of how exactly the Trial Court erred is downright confusing. Huang argues, for example, that the Trial Court contravened this Court's mandate by "delegating the ultimate legal status determination to the jury." (Huang's brief, p 14). That is incorrect. The Trial Court delegated the *control* question to the jury, not the question of whether employment status was met, which is precisely what this Court directed the Trial Court to do. The jury answered that question in the negative, thus prompting the Trial Court correctly to make the appropriate legal determination based on that factual finding—that Huang was not an employee.

Huang next argues that the Trial Court contravened this Court's instruction by "failing to put any specific factual question to the jury, instead just listing the factors the Sixth Circuit directed the district court to weigh… ." (Huang's brief, p 14). Again, that is simply incorrect. The Trial Court did put this specific factual question to the jury whether Defendants had the right to control the manner and means by which Huang accomplished her work. If what Huang means (which is anything but clear) is that the Trial Court was required to submit thirteen different questions to the jury based on the factors for the jury to consider in deciding the control question, Huang cites no basis whatever for that conclusion. It would have made no sense to put every single factor into a separate question for the jury to consider when, as even this Court recognized, "these factors do not fit neatly in every context." *Huang*, 116 F.4th at 557. The correct way to proceed, indeed the only sensible way to proceed, was precisely how the Trial Court proceeded: to place the "crux" control question before the jury in a special verdict form while also instructing the jurors as to the factors they could consider as they saw fit in resolving that threshold question.

Huang also argues that the Trial Court erred by "conflating the right to control with actual control." (Huang's brief, p 17). But that argument ignores this Court's articulation of the applicable test. Twice this Court referred to the

Defendants' "right to control the manner and means by which" work was done. *Huang*, 116 F.4th at 556 and 557. Later, the Court concluded its analysis by stating that, at trial, "the jury should make factual findings regarding Rizzoni's disputed control over where and when Huang worked." *Id*. at 559-560. Huang's argument does not take issue with the Trial Court's action so much as it does with the legal standard as articulated by this Court—a standard that the Trial Court strictly followed on remand.

The only case Huang cites as supposedly analogous is *Rodgers v. Ohio Valley CFM, Inc.*, 774 F.2d 1163 (6th Cir. 1985). Huang cites *Rodgers* for the proposition that "interrogatories that collapse issues 'could prevent the jury from properly considering the issues' and warrant a new trial." (Huang's brief, p 18, quoting *Rodgers*). But what the Court actually said in *Rodgers* is that an interrogatory may be defective and warrant retrial "if it combined and confused two theories of liability and might have thereby 'prevented the jury from fully and properly considering either.'" *Rodgers*, 774 F.2d at *6, quoting *Gootee v. Colt Industries, Inc.*, 712 F.2d 1057, 1067-68 (6th Cir. 1983). Also, where a confusing interrogatory's exclusive use effectively directed a verdict in the defendant's favor, a new trial is warranted. *Rodgers,* at *6. But these principles have no application here. In *Rodgers*, the interrogatory "was defective by combining and confusing the issues of liability and damages." *Id*.

at *7. "Because the damage issues had not been tried, the jury was unable to answer affirmatively the compound question." *Id.* Nothing like that happened in the instant case, though, and Huang does not even argue that it did.

Huang does admit, and Defendants agree, that "trial courts have 'broad discretion' over 'the form and content' of Rule 49 interrogatories," citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 715 (6th Cir. 1975) (Huang's brief, p 18). Here, the Trial Court's special verdict form, which was taken directly from this Court's own articulation of the test for determining whether one qualifies legally as an employee, quite clearly falls well within the broad discretion over the form and content of that interrogatory. Consequently, Huang's burden to show an abuse of discretion fails for the simple reason that she cannot demonstrate that the Trial Court erred at all.

**3. Any error was not plain, i.e., obvious or clear.**

While Defendants submit that the Trial Court did not err in connection with the special verdict form or jury instructions on that issue, at a minimum Huang has failed to demonstrate the type of plain error that would warrant reversal in the context of this case. "A plain error is 'an obvious and prejudicial error that requires action by the reviewing court in the interests of justice.'" *Eid*, 377 Fed. Appx. at 442, quoting *Reynolds*, 148 F.3d at 594. Even if it is assumed *arguendo* that the Trial Court committed some type of error in

connection with the special verdict form or the jury instructions, that error is anything but clear or obvious.

In fact, as discussed above, Huang's argument as to how exactly the Trial Court erred is far from clear. Huang seems to criticize the Trial Court's reading of the factors for determining the control question in the instructions, rather than putting them into a multiple-question survey for the jury. But that was not erroneous, much less clear error, especially since the jury was not even required to consider or put equal weight on all factors. Huang also seems to suggest that the Trial Court erred by conflating the issue of Defendants' right to control with the actual exercise of control. But, as noted, this Court also used both concepts in its different articulations of what constitutes the crux of the control test and what the Trial Court was to do on remand. If the error Huang identifies meets the plain-error threshold, there is no such thing as an error that does not.

But there *is* a difference between error and plain error, as shown by two cases from this Court, both of which are instructive on the issue of an appellant's burden to establish plain error. In *Eid*, this Court articulated the appellant's argument as to how the trial court erred in instructing the jury. The Court articulated what it called the "*Rodgers* rule" regarding the propriety

of a cautionary instruction.[2] While recognizing the possibility that the *Rodgers* rule applied, thus requiring the reading of a cautionary instruction, this Court said this: "[A]t present, it is not clear if the *Rodgers* rule applies in civil cases. We find it unnecessary to resolve that issue here, because, given the present state of the law, any error the district court committed was not *obvious or plain*." *Eid*, 377 Fed. Appx. at 442 (emphasis added).

Also instructive is *Scott v. Miller*, 361 Fed. Appx. 650 (6th Cir. 2010). There the Court discussed the trial court's omission of an instruction where it was not clear that reading the instruction was required. Based on several factors that made the situation unique, the Court reasoned, "These factors combine to make the omission of this instruction far from a 'clear or obvious' legal error, as opposed to one that is 'subject to reasonable dispute.'" *Id*. at 654.

The instant case is, at best for Huang, similar to *Eid* and *Scott* in that even if the Trial Court committed error, it is anything but clear or obvious. Accordingly, there is no basis to reverse.

---

[2] The rule was based on *United States v. Rodgers*, 109 F.3d 1138 (6th Cir. 1997).

### 4. Huang has not demonstrated entitlement to a new trial even if there were plain error.

Finally, even if Huang had demonstrated that the Trial Court committed error regarding the special verdict form, and that the error was so clear or obvious as to constitute plain error, there is still no basis to grant a new trial. As this Court has recognized, the plain error standard is not necessarily met even when there is an erroneous instruction. *See, e.g., Lee,* 432 Fed. Appx. at 448 ("even erroneous instructions do not require reversal unless the instructions are 'confusing, misleading *and* prejudicial.'")(emphasis in *Lee*)(citing *Pivnick v. White, Getgey & Meyer Co., LPA*, 552 F.3d 479, 488 (6th Cir. 2009). This is especially so since "the plain error standard is less likely to be met in civil cases than in criminal cases." *Lee*, 432 Fed. Appx. at 449, citing *Alsobrook*, 352 Fed. Appx. at 2.

*Alsobrook* is instructive on this point. In that case, the trial court committed instructional error, and this Court concluded that "the error below was obvious." *Alsobrook*, 352 Fed. Appx. at 2. The Court nevertheless refused to order a new trial because the plaintiff failed to demonstrate that the erroneous instruction impacted the plaintiff's substantial rights or affected the outcome of the district court proceedings. The Court reasoned, "The appellants' 'case is not so strong that we can say that had it not been for an

erroneous instruction [they] surely would have prevailed at trial.'" *Id*. at 3-4, quoting *Mesman v. Crane Pro Servs.,* 512 F.3d 352, 357 (7th Cir. 2008).

Of particular note here, *Alsobrook* went on to address what it called "the costs of correcting an error," which it deemed an important factor in that case. *Id*. at 4. The Court made the following observation, which bears quoting, given the context of this case:

> We are reluctant to require the district court to redo a two-week trial in this civil case because of a single error in the jury instructions. Considerable public resources have already been devoted to resolving this civil suit.

*Alsobrook* at *4. That observation applies with even greater force in the instant case, where the lower court has tried this case *twice*, by two different judges with two different juries, both of which found for Defendants. The grant of a new trial is also especially inappropriate here, where Huang did not even bother to order the transcript required to advance her arguments on appeal until after Defendants moved to dismiss the appeal based on that failure.

In *Alsobrook*, this Court concluded that the appellants there "have simply failed to meet their burden of demonstrating that the error below seriously affected the fairness, integrity, or public reputation of this judicial proceeding." *Alsobrook* at *4. The same is true here, with even greater force, in

that the trial court did not even commit error in connection with the instructions and special verdict form, much less plain error. Accordingly, this Court should affirm.

Finally, Huang's claim that prejudice is shown by the jury's question to the judge about the special verdict is without merit. As Huang points out, the jury asked, "Can we have further clarification on the question we are answering? Is it more about do they have the right to do something or is the question about if she was an employee during that time?" (Huang's brief, p 20). But that question merely suggests the jury understood the connection between the control question it was asked to answer and the legal issue of whether Huang was an employee—something the jury clearly understood was at stake, given that counsel for both sides argued the issue of whether Huang was an employee. The Trial Court was right to decline to provide extra clarification in that regard because it was unnecessary, and, as Huang herself has stressed, the jury was not to answer the *legal* question of whether Huang was an employee. The jury was reminded simply to answer the question it was asked in the special verdict form, which it did.

In short, the Trial Court handled the instructions and special verdict form correctly and quite clearly did not commit plain error. And even if there

had been plain error, it did nothing to prejudice Huang or compromise the integrity of the proceeding. Accordingly, there is no basis to reverse.

## ARGUMENT II

### HUANG HAS FAILED TO DEMONSTRATE THAT THE TRIAL COURT ABUSED ITS DISCRETION CAUSING HARM WARRANTING A NEW TRIAL BY EXCLUDING FROM EVIDENCE A CAMPUS SURVEY ON INSTANCES OF SEXUAL ASSAULT AND HARASSMENT GENERALLY, AND BY PRECLUDING A LOST-WAGES DAMAGES AWARD

**A. Standard of review.**

This Court reviews trial court evidentiary rulings for abuse of discretion. *Lee*, 432 Fed. Appx. at 444; *Nolan v. Memphis City Schs.*, 589 F.3d 257, 264 (6th Cir. 2009). "Broad discretion is given to the district courts in determinations of admissibility… and those decisions will not be lightly overturned." *Lee*, quoting *Nolan*, 589 F.3d at 265 (quoting *Tompkins v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004)). Furthermore, even if the district court's evidentiary ruling was erroneous, this Court will not grant a new trial if the ruling constitutes harmless error. *Id*.

In fact, as Huang acknowledges, in applying the harmless error standard an appellate court examines the record and proceedings in their entirety to determine whether it has fair assurance that the verdict was not substantially

swayed by the error. (Huang's brief, p 23, citing *Kotteakos v. United States,* 328 U.S. 750, 764 (1946)). As Huang correctly recognizes, reversal is appropriate only where erroneous exclusions of evidence distort the trial on core issues or cumulatively deprive a party of a fair trial. (Huang's brief, p 24, citing *Beck v. Haik*, 377 F.3d 624, 643 (6th Cir. 2004)).

## B. Application

Huang seeks a new trial based on only one evidentiary ruling and a damages ruling that Huang mischaracterizes as excluding evidence. As discussed below, the Trial Court did not err, much less abuse its discretion, in connection with either ruling. But even the cumulative effect of those rulings, assuming *both* were erroneous, does not warrant a new trial because Huang has come nowhere close to demonstrating that those rulings distorted the trial on core issues or cumulatively deprived her of a fair trial.

### 1. Exclusion of the OSU campus survey was correct and did not deprive Huang of a fair trial.

#### a. The Trial Court's ruling was correct and not an abuse of discretion.

Huang first argues that the Trial Court erred by excluding a campus climate survey that addressed reporting of sexual assault and sexual harassment by OSU students. As Defendants' counsel pointed out, the survey shed literally no light on what actually happened between Rizzoni and Huang.

It merely set forth general statistics on reporting of sexual assaults and sexual harassment by students at OSU. The survey also provided reasons why persons might not report forcible rape, and it talked about actions people should take if a student shared a concern with him or her. The survey also provided phone numbers and contact information on how to report incidents and described when OSU must act to support a complainant or adjudicate a violation.

Huang does not even argue that the survey had any relevance to the question whether sexual harassment by Rizzoni occurred. She argues only that it could go to the issue whether Huang's account "was plausible in OSU's campus environment." (Huang's brief, p 24). But even that is incorrect. First, the survey does not speculate about reasons why students would not report sexual harassment; it speaks only to reasons why victims of forcible rape decline to report. Second, even if the survey could somehow be viewed as relevant to the issue of whether non-reporting of sexual harassment in general is plausible, that would have no relevance to the plausibility of Huang's story under the circumstances of this case. As Huang herself describes those circumstances in her statement of the case, she claims this is a case about "the exercise of power and acts of retaliation" against a "Ph.D student whose advisor controlled her funding, her visa, and her academic future, and who,

according to Huang, used that power… to sexually harass her… ." (Huang's brief, p 8). Nothing in the general survey sheds any light whatsoever on the plausibility of Huang's story, and, therefore, the survey was properly excluded as completely irrelevant to this case.

Even if there were an argument to be made that the survey was relevant, at a minimum the prejudicial impact of the survey would substantially outweigh its probative value, and, therefore, was properly excluded under F.R.E. 403. Again, a general survey about sexual assault, sexual harassment, and reasons for students not reporting sexual assaults has no real probative value on the viability of Huang's claim in this case.

At an absolute minimum, the Trial Court acted well within its discretion by excluding the survey, which was irrelevant and, at most, would have miniscule probative value in this unique case.

**b. Even if erroneous, the ruling did not deprive Huang of a fair trial.**

Huang also argues the error was not harmless, yet she concedes that the Trial Court did allow testimony from Doctors Westendorf and Deschenes about treating other students who experienced sexual assault. (Huang's brief, p 25). Thus, Huang effectively admits that the survey would have been

cumulative evidence, at best, that sexual assault and sexual harassment do sometimes occur on OSU's campus.

Huang cites only one authority in support of her argument: *Beck*, which she claims is "directly in line with" the instant case. But *Beck* is not even close to being "in line with" or even analogous to the instant case. In *Beck*, which involved a drowning death, this Court determined that the trial court committed five different evidentiary errors, all of which were important. The trial court erroneously excluded all testimony of the plaintiff's expert witness, which was aimed directly at the defendant's negligence. *Id*. at 633. The court erroneously excluded a letter from a witness criticizing the defendant for not contacting the Coast Guard more quickly, which could have resulted in Beck being saved. *Id*. at 637. The trial court erroneously excluded additional letters, on relevance grounds, which tended to prove the same thing. *Id*. at 639. The trial court also erroneously excluded spoliation evidence suggesting a deliberately destroyed audio recording that would have been very damaging. *Id*. at 640-641. Finally, the trial court erroneously allowed defense counsel to ask a highly prejudicial question that accused the decedent's mother and her family of child molestation. *Id*. at 642. This Court ultimately held that the cumulative effect of these five important errors deprived the plaintiff of a fair trial.

The instant case involves nothing like what transpired in *Beck*, and Huang makes no real argument—and certainly does not develop any—to the contrary. If anything, the fact that Huang identifies just a single evidentiary ruling, on a document that has no actual connection to the facts of this case, proves the lack of merit in her request for a new trial on its face. Even if the Trial Court had erred by excluding the general survey, that one minor error hardly can be deemed to have deprived Huang of a fair trial when she was able to present all the evidence she wanted to present on the issue of whether Rizzoni engaged in unwanted touching and why she never reported it.

**2. Preclusion of lost-wages damages was correct and did not deprive Huang of a fair trial.**

Finally, Huang argues that the trial court abused its discretion in excluding "**Economic Damages Evidence**" (Huang's brief, p 26 (emphasis in heading)). This argument fails for at least two fundamental reasons. First, the Trial Court was correct to recognize that, because Huang had not offered non-speculative proof of causation and amount, she did not prove entitlement to lost-wages damages. Second, and perhaps even more fundamentally, the Trial Court's ruling did not preclude the presentation of evidence to the jury, contrary to Huang's assertion, and, therefore, cannot possibly have deprived Huang of a fair trial, especially when the jury found no liability.

#### a. The Trial Court's ruling was correct and not an abuse of discretion.

The Trial Court declined to allow an award of lost-wages damages because Huang did not prove entitlement to them with non-speculative proof. A plaintiff must prove her entitlement to back pay and establish the appropriate amount with reasonable certainty. *Szeinbach v. Ohio State Univ.*, 820 F.3d 814, 821 (6th Cir. 2016), *citing McMahon v. Libbey–Owens–Ford Co.,* 870 F.2d 1073, 1079 (6th Cir.1989) ("[B]ack pay must be limited to actual damages and proved with reasonable certainty." (citation and internal quotation marks omitted)). If the plaintiff fails to offer such proof, then an award of back pay is not warranted. *Id., citing also Christopher v. Stouder Mem'l Hosp.,* 936 F.2d 870, 880 (6th Cir.1991) (affirming the district court's denial of back pay when the plaintiff "did not prove what she actually would have received" and the claim to back pay was based on "mere speculation").

The Trial Court analyzed the issue in some detail, at Tr. Vol VII, RE 325-6, PageID.10991-10997. The court noted the several reasons Huang gave for causing lost wages of two types: a delayed graduation caused by Rizzoni (RE 325-6, PageID.10991); and lost wages even after 2023 due to stress from litigation and the claim that Dr. Rizzoni supposedly "poisoned the well" for her. (RE 325-6, PageID.10993-10994). The Trial Court correctly concluded that

both theories were insufficient and not proven with a reasonable degree of certainty.

Regarding the delayed graduation, the Trial Court correctly concluded that whether Huang would have graduated in 2018, whether she would have landed a job at that point, and what wages she would have received were all entirely speculative. (RE 325-6, PageID.10991-10992). The Trial Court also correctly ruled that the claim for later damages, on the basis that Huang was under "litigation stress" and that Rizzoni somehow poisoned the well, such that no one would hire her, was insufficient. The court correctly noted, even citing Huang's counsel's concession, that "stress from litigation" is not a basis for a lost-wages award. (PageID.10993-94). And the court correctly recognized that the poison-the-well theory was rejected by this Court in *Szeinbach.* (PageID.10994). As the Trial Court noted, the plaintiff in *Szeinbach* also argued that she was deprived of work by "reputational harm" caused by the defendant. But this Court rejected that theory as unduly speculative where the plaintiff did not prove with reasonable certainty that she was unable to obtain a specific job because of something done in that regard by the defendant. (PageID.10993-94).

The Trial Court very thoroughly analyzed Huang's lost-wages claim and demonstrated why, based on the evidence submitted, the claim is speculative

and was not proven with reasonable certainty. (See RE 325-6, PageID.10993-10997). Huang makes no effort even to address the Trial Court's reasoning—or even the *Szeinbach* decision on which that analysis was based, despite the fact the court specifically cited that decision in its analysis. *Id.*

At a minimum, the Trial Court acted well within its discretion in concluding that Huang's lost-wages claim was precluded as too speculative.

**b. Even if erroneous, the ruling did not deprive Huang of a fair trial.**

A perhaps even more glaring flaw in Huang's claim that the preclusion of lost wages deprived her of a fair trial is that that ruling cannot possibly be considered harmful where the jury found no liability as against OSU or Rizzoni. Huang repeatedly characterizes the ruling as excluding "evidence" from the jury. (Huang's brief, pp 8, 26-28). But the ruling had no such effect; it was not made until after the proofs were submitted, and, therefore, it kept the jury from hearing literally no evidence.

Huang contends that the ruling barring an award of economic loss "likely affected how the jury viewed the seriousness and real-world impact of the misconduct" (Huang's brief, p 27). That is speculation squared, especially since the ruling did not prevent Huang's counsel from arguing in closing that Rizzoni's conduct impacted her career path. (See Tr. Vol VII, RE 325-6,

PageID.11041). Huang, of course, cites no authority for the proposition that preclusion of a type of damages is even relevant to a jury's assessment of liability, especially in a he-said, she-said case of this sort. In fact, Huang cites no authority whatsoever for her argument that exclusion of economic-loss damages somehow warrants a new trial under the circumstances of this case, which reveals the weightlessness of her claims.

* * *

Huang's last-ditch argument is a suggestion that the exclusion of the campus survey document and preclusion of economic-loss damages had the cumulative effect of denying her a fair trial. (Huang's brief, p 28). That argument fails on its face. If anything, the fact that Huang can point to only two ancillary, non-substantive rulings, which are entirely unrelated to one another, proves the absence of *any* cumulative effect that impacted the fairness of the trial.

Huang had her day in court—and then some. The trial was eminently fair and should have marked the end of this lengthy litigation. If this Court denies Defendants' pending motion to dismiss this appeal, it should affirm the Trial Court's judgment, given the absence of any basis whatsoever to do otherwise.

## RELIEF

For the reasons set forth herein, Defendants request that this Court affirm the judgment of the district court. Defendants further request any and all other relief to which they are entitled.

Respectfully submitted,

By /s/Jeffrey C. Gerish

Jeffrey C. Gerish
Christina L. Corl
Attorneys for Defendants-Appellees
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
jgerish@plunkettcooney.com
ccorl@plunkettcooney.com

Dated: June 26, 2026

## CERTIFICATE OF COMPLIANCE

Jeffrey C. Gerish, being first duly sworn, certifies and states the following:

1. He is an attorney with the firm Plunkett Cooney, and is in principal charge of the above-captioned cause for the purpose of preparing the attached brief on appeal;

2. The brief on appeal prepared by his office complies with the type-volume limitation, using Cambria size 14 font; and

3. The word processing system counts the number of words in the brief as 8,221.

/s/Jeffrey C. Gerish
Jeffrey C. Gerish

## CERTIFICATE OF SERVICE

Jeffrey C. Gerish, being first duly sworn, deposes and says that he is a Shareholder with the Firm of Plunkett Cooney and that on June 26, 2026, he caused a copy of this document to be served upon all parties of record, and that such service was made electronically upon each counsel of record so registered with the Sixth Circuit Court of Appeals and via U.S. Mail to any counsel not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid and depositing said envelope and its contents in a receptacle for the U.S. Mail.

/s/Jeffrey C. Gerish
Jeffrey C. Gerish (P51338)
PLUNKETT COONEY
Attorneys for Defendants-Appellees
38505 Woodward Ave., Suite 100
Bloomfield Hills, MI 48304
jgerish@plunkettcooney.com

## ADDENDUM – DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RECORD ENTRY | DESCRIPTION | PageID # |
|---|---|---|
| 311 | Special Verdict Form | 9565 |
| 325-4 | Trial Transcript, Volume V | 10680 - 10788 |
| 325-5 | Trial Transcript, Volume VI | 10789 – 10987 |
| 325-6 | Trial Transcript, Volume VII | 10988 - 11092 |